UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARLOS LUIS AGOSTO,

    Petitioner,

-vs-                                                          Case No. 8:16-cv-1200-T-36JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Petitioner, a Florida prisoner, initiated this action by filing a petition for the writ of habeas corpus pursuant to 28 U.S.C. Section 2254 (Doc. 1), and a memorandum in support (Doc. 2). Upon consideration, the Court ordered Respondent to show cause why the relief sought in the petition should not be granted (Doc. 10). Thereafter, Respondent filed a response in opposition (Doc. 11).

Petitioner alleges four grounds for relief in his petition:

1. Counsel was ineffective in his assistance when rendering affirmative misadvice to petitioner;

2. Counsel was ineffective in his assistance when failing to call a witness to testify for the defense;

3. Lower court erred in denying JOA filed based on insufficient evidence of a "deadly weapon," as classified; and

4. Lower court erred in denying JOA based on insufficient evidence of "great bodily harm."

**I. PROCEDURAL HISTORY**

Petitioner was convicted of aggravated battery with a deadly weapon resulting in great bodily

harm for smashing a glass beer bottle on the head and face of his former girlfriend (Respondent's Ex. A2), and sentenced to 30 years in prison as a prison releasee reoffender (Respondent's Ex. A3). His conviction and sentence were affirmed on appeal (Respondent's Ex. B3).

He filed a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure, alleging two claims of ineffective assistance of trial counsel (Respondent's Ex. C1) and, subsequently, filed an amendment to the motion (Respondent's Ex. C3). Following an evidentiary hearing (Respondent's Ex. C4), the Rule 3.850 motion was denied (Respondent's Ex. C5). The denial of the Rule 3.850 motion was affirmed on appeal (Respondent's Ex. C10).

Petitioner thereafter filed his federal habeas petition and memorandum in this court (Docs. 1, 2).

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

2

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28

U.S.C. § 2254(e)(1).

**B. Ineffective Assistance of Counsel Standard**

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*.

Petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner

must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.") (citation omitted).

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

**C. Exhaustion of State Remedies and Procedural Default**

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845.)

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its' prisoners federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State. . .if he has

the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted

6

claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier,* 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## III. ANALYSIS

**Ground One**

Petitioner contends that defense counsel was ineffective in advising him not to accept the State's offer of 4½ years imprisonment. He asserts that he would have accepted the offer had counsel not advised him to reject it.

This claim was raised in state court in Claim One of Petitioner's Rule 3.850 motion (Respondent's Ex. C1, pp. 10-16). In denying the claim, the state post-conviction court stated:

> In Claim One of his Motion, Defendant alleges trial counsel was ineffective for advising him not to accept the State's offer of 54 months' imprisonment. Defendant asserts the offer was on the table for one month, but counsel advised that he "hold out for a better plea offer." Defendant argues that if counsel had fully advised him of the maximum sentence he faced, he would have accepted the offer of 54 months.
>
> * * *
>
> At the evidentiary hearing, Defendant testified that he discussed the initial plea offer of five years with his trial counsel (*See* Evid. Hrg. Transcr. p.4, attached). He further testified that although he was ready and willing to accept the five year plea offer, his counsel advised him to hold out for a better deal (*See* Evid. Hrg. Transcr. pp. 4, 9, attached). Defendant testified that at his next court hearing date the State revoked their offer of five years and offered him a fifteen year plea deal in its place (*See* Evid. Hrg. Transcr. P. 4, 5, attached). Defendant testified that he then discussed this fifteen year offer with his trial counsel (*See* Evid. Hrg. Transcr. p. 5, attached).

7

Defendant testified that he did not accept this fifteen year plea offer because he was hoping to still accept the initial five year offer (*See* Evid. Hrg. Transcr. p. 5, attached).

On cross-examination, Defendant testified that when he was out on bond in this instant case he picked up a new charge (*See* Evid. Hrg. Transcr. p. 9, attached). Defendant further testified that he never told his trial counsel that he was refusing to accept the State's offer because he thought the victim would fail to testify in court (*See* Evid. Hrg. Transcr. p. 9, attached).

Defense also called Lashay Sanchez Cabrera, Defendant's trial counsel, to testify. Ms. Cabrera also testified that she discussed the State's initial five year plea offer with Defendant at his arraignment on March 9, 2010 (*See* Evid. Hrg. Transcr. p. 13, attached). Ms. Cabrera further testified that when she relayed the State's original offer to Defendant he stated he did not believe the witness was going to show up and cooperate with the case, and therefore, he did not want to accept the offer (*See* Evid. Hrg. Transcr. p. 14, attached). Ms. Cabrera testified that this initial five year offer was still open at Defendant's next court hearing date on April 8, 2010 (*See* Evid. Hrg. Transcr. p. 14, attached). She testified that the State did not revoke its initial offer until Defendant picked up an additional charge and his bond was revoked about a week and a half later (*See* Evid. Hrg. Transcr. p. 15, attached). Ms. Cabrera also testified that when the State revoked its initial five year plea offer, the State then offered Defendant a fifteen year plea offer which she discussed with Defendant (*See* Evid. Hrg. Transcr. p. 16, attached). Ms. Cabrera further testified that Defendant rejected this new offer on several occasions (*See* Evid. Hrg. Transcr. p. 16, attached).

On cross-examination, Ms. Cabrera testified that she absolutely did not tell Defendant to hold out for a better offer (*See* Evid. Hrg. Transcr. p. 18, attached). Ms. Cabrera further explained that at the time the State moved to revoke Defendant's bond any offers previously given by the State were also revoked, and Defendant's sentencing guidelines changed (*See* Evid. Hrg. Transcr. pp. 19-20, attached).

...the Court finds that Defendant failed to meet the two prong test as set forth in *Strickland*. . .that counsel's performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

...*Alcorn v. State*, 121 So. 3d 419[, 430] (Fla. 2013), laid out four requirements Defendant must meet to prove defense counsel's deficient performance prejudiced the defense: (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Applying the case law, the Court finds that even if it were to find counsel

8

deficient, Defendant has failed to demonstrate prejudice. The Court initially notes that it finds Ms. Cabrera's testimony from the evidentiary hearing more credible than Defendant's. Based on the testimony adduced at the evidentiary hearing, Defendant cannot meet the first prong required by *Acorn*. Defendant did not reject the plea offer based on his counsel's lack of advice, instead he rejected both the five year plea offer and the fifteen year plea offer numerous times because he was convinced the victim would not testify if he went to trial. Additionally, Defendant has failed to provide any evidence that the prosecutor in this case would not have withdrawn the offer. Moreover, the prosecutor did, in fact, revoke the plea offer at the April 20, 2010 hearing when the State moved to revoke Defendant's bond. As such, Defendant cannot satisfy the prejudice prong of *Strickland*.

**Accordingly, no relief is warranted. The Court must deny Claim One of Defendant's Motion**.

(Respondent's Ex. C5, pp. 3-6) (emphasis in original).

The state post-conviction court's ruling on the prejudice prong was not an objectively unreasonable application of clearly established law. To establish prejudice in these circumstances, Petitioner must demonstrate a reasonable probability that he would have accepted the plea offer of 4½ years but for counsel's alleged advice not to accept it. *See Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (holding that to show prejudice in the context of a foregone guilty plea, a petitioner must show, *inter alia*, that, but for the ineffective assistance of counsel, there is a reasonable probability that he would have accepted the plea offer).

The state court found that Petitioner rejected the 4½ year offer, not based on defense counsel's advice, but because he believed the victim would not testify at trial.[1] This finding is supported by defense counsel's testimony during the evidentiary hearing that at the time the 4½ year offer was made, Petitioner "did not want the offer" because "[h]e did not believe the alleged victim was going to appear." (Respondent's Ex. C4, transcript p. 18, lines 6-16). Although Petitioner testified that he did not accept that offer because defense counsel "told [him] to hold out for a better

---

[1] In his federal habeas petition, Petitioner does not challenge trial counsel's performance with respect to the 15 year offer.

plea deal next month. . ." (*Id*., transcript p. 4, lines 10-18), defense counsel testified that she never told Petitioner "that he needed to hold out for a better offer. . . ." (*Id*., transcript p. 18, lines 22-24). The state court found defense counsel's "testimony from the evidentiary hearing more credible than [Petitioner's]." This credibility finding is presumed correct, *see Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir.1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's]."), *cert. denied*, 526 U.S. 1047 (1999); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir.1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are. . .entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161 (1995), and Petitioner presents no evidence to overcome this presumption. Petitioner's claim therefore fails the prejudice prong of the *Strickland* test because Petitioner fails to show a reasonable probability that he would have accepted the plea offer but for ineffective assistance of counsel.

The state court did not unreasonably apply federal law or make an unreasonable determination of the facts. Accordingly, Ground One does not warrant federal habeas relief.

**Ground Two**

Petitioner contends that defense counsel was ineffective in failing to call Dr. Nouhad Moussa, the emergency room physician who treated the victim, to testify that the injuries sustained by the victim were not serious. Petitioner argues that had Dr. Moussa so testified, he would not have been found guilty of aggravated battery resulting in great bodily harm.

This claim was raised in state court in Claim Two of Petitioner's amended Rule 3.850 motion (Respondent's Ex. C3). In denying the claim, the state post-conviction court stated:

> In Claim Two of his Motion, Defendant alleges counsel was ineffective for failing to call Dr. Nouhad Moussa to testify at trial. Defendant asserts that Dr. Moussa would have testified that the victim's injuries were minor.

* * *

At the evidentiary hearing, Defendant testified that he asked his trial counsel to call Dr. Nouhad Moussa (*See* Evid. Hrg. Transcr. p. 6, attached). Defendant further testified that he believes that Dr. Moussa would have been able to testify regarding the victim's injuries (*See* Evid. Hrg. Transcr. p. 6, attached). He testified that he believes the jury would have found Dr. Moussa's testimony more credible because he is a medical doctor (*See* Evid. Hrg. Transcr. p. 6, attached). Defendant testified that his counsel gave him no response when he requested that she call Dr. Moussa (*See* Evid. Hrg. Transcr. pp. 6-7, attached).

On cross-examination, Defendant further testified that Dr. Moussa was the emergency room doctor who treated the victim in this case (*See* Evid. Hrg. Transcr. p. 10, attached). He testified that he believes Dr. Moussa's testimony would have helped his case because Dr. Moussa would have testified that the victim did not receive any broken bones or fractures (*See* Evid. Hrg. Transcr. p. 11, attached). While Defendant stated that he did not remember the cross-examination of the victim conducted by his trial counsel, Defendant testified that he did remember his counsel cross-examining the law enforcement officer in the case and that the officer stated he only witnessed very minor injuries on the victim (*See* Evid. Hrg. Transcr. p. 12, attached).

During Ms. Cabrera's testimony at the evidentiary hearing, she testified that Defendant never asked her to call Dr. Moussa (*See* Evid. Hrg. Transcr. p. 23, attached). She further testified that she did not call Dr. Moussa because she did not need to call him (*See* Evid. Hrg. Transcr. p. 22, attached). Ms. Cabrera further elaborated that she did not need to call Dr. Moussa because the alleged victim had already minimized her injuries and confirmed that she required no followup treatment. Additionally, the officer who initially responded to the scene had categorized the injuries as minor (*See* Evid. Hrg. Transcr. p. 22, attached). Moreover, Ms. Cabrera testified that although she had access to the victim's medical records she chose not to introduce these at trial as she found them unhelpful (*See* Evid. Hrg. Transcr. p. 24, attached). Again she reiterated that she had already obtained the information she needed from the officer who testified (*See* Evid. Hrg. Transcr. p. 24, attached). Ms. Cabrera further testified that at one point during the trial the victim did step down and show the jury a scar she sustained from her previous injuries (*See* Evid. Hrg. Transcr. p. 24, attached). She explained that the State during its closing argument used this scar to argue the alternative theory of permanent disfigurement (*See* Evid. Hrg. Transcr. p. 6, attached). Ms. Cabrera testified that even if they could have gotten around the theory of great bodily harm the presentation of this scar made it impossible for them to get around the permanent injury theory (*See* Evid. Hrg. Transcr. p. 25, attached).

On redirect examination, Ms. Cabrera testified that she does not believe it would have been helpful for Dr. Moussa to testify regarding whether the scar originated from the original injury because the State presented a photograph which

illustrated as much (*See* Evid. Hrg. Transcr. p. 25, attached). Ms. Cabrera testified that, in general, she does not see how Dr. Moussa's testimony would have been helpful to Defendant's case (*See* Evid. Hrg. Transcr. pp. 26, attached).

. . .The Court finds that Defendant failed to meet the two prong test as set forth in *Strickland*. . . .

In conducting our review, there is a strong presumption that trial counsel's performance was not ineffective, and the defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action 'might' be considered sound trial strategy." *See Strickland*, 466 U.S. at 690 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000).

The Court finds that Ms. Cabrera made a strategic decision not to call Dr. Moussa to testify as she was able to elicit the same information from two other witnesses. The Court finds that Ms. Cabrera adequately and thoroughly cross-examined both the victim and the law enforcement officer on the issue of the severity of the victim's injuries (*See* Evid. Trial Transcr. pp. 159-160, 213-214, attached). Moreover, the Court finds that counsel's testimony at the evidentiary hearing was more credible than Defendant's testimony. The Court finds this strategic decision was reasonable. As such, Defendant cannot satisfy the deficiency prong of *Strickland*.

Additionally, Defendant is unable to meet the prejudice prong. As previously discussed, Defendant's counsel was able to elicit the identical information from the victim and the law enforcement officer as the testimony Defendant contends Dr. Moussa would have provided. Therefore, the Court finds that Dr. Moussa's testimony would have been cumulative to the evidence already adduced by Defendant's counsel at trial and would not have acted to cast doubt on the outcome of the trial. As such, Defendant cannot satisfy the prejudice prong of *Strickland*.

**Accordingly, no relief is warranted. The Court must deny Claim Two of Defendant's Motion.**

(Respondent's Ex. C5) (emphasis in original).

The state post-conviction court's denial of this claim was not objectively unreasonable. First, "[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified

are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978) (citations omitted). Further, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir.1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, 1996 WL 107279 at *3 (N.D.Cal. March 7, 1996), *affirmed*, 106 F.3d 408 (9th Cir.1997). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id*.

Petitioner has failed to present evidence of actual testimony or an affidavit from Dr. Moussa. Therefore, he only speculates on Dr. Moussa's proposed testimony and presents no evidence showing that Dr. Moussa would have testified as Petitioner hypothesizes.

Second, this Court agrees with the state post conviction court's determination that defense counsel made a reasonable strategic decision not to call Dr. Moussa because his proposed testimony essentially would have been cumulative to the victim's and Officer Mercado's trial testimony regarding the severity of the victim's injury.[2] Petitioner offers no reason to believe that there is a reasonable probability that had Dr. Moussa testified, it would have changed the outcome of the trial. *See, e.g., United States v. Tavares*, 100 F.3d 995, 998, 321 U.S.App. D.C. 381, (D.C.Cir.1996) (where the record establishes no reasonable probability that the defendant's asserted testimony would have changed the outcome of the trial, the defendant has failed to make a showing of prejudice). Consequently, Petitioner cannot show either deficient performance or that he was

---

[2] The victim testified that she received four or five stitches, but received no follow-up treatment or any other injuries (Respondent's Ex. A4, transcript pp. 159-60). Officer Mercado testified that he considered the victim's injuries minor (*Id*., transcript pp. 213-14).

13

prejudiced by counsel's decision not to call Dr. Moussa to testify.

Petitioner has failed to demonstrate that the state court's denial of this claim was an unreasonable application of *Strickland*. Accordingly, Ground Two does not warrant relief.

**Grounds Three and Four**

In Ground Three, Petitioner contends that the state trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence that he used a "deadly weapon." He argues that under Florida law, the glass bottle he used during the aggravated battery is not a "deadly weapon." In Ground Four, he contends that the state trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence that the victim sustained "great bodily harm." He argues that the injuries sustained by the victim do not amount to "great bodily harm" as defined under Florida law.

Respondent argues that these claims do not raise a federal constitutional claim and therefore do not state a basis for federal habeas corpus relief (Doc. 11, pp. 14-15). The Court agrees. A state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir.1992). *See also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir.2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them"). Federal courts "must defer to a state court's interpretation of its own rules of evidence and procedure." *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir.1985) (citing *Spencer v. Texas*, 385 U.S. 648 (1967)).

The issues of whether the glass bottle used by Petitioner to strike the victim in the head was a "deadly weapon" under Florida law, and whether the victim sustained "great bodily harm" as defined by Florida law, are matters of state law. Accordingly, these claims are not subject to federal

habeas review.

To the extent that these claims can be liberally construed to assert that the state trial court's denial of Petitioner's motion for judgment of acquittal violated his right to due process of law, Respondent contends that Petitioner failed to fairly present a federal due process claim to the state courts (Doc. 11, pp. 5-6). Therefore, Respondent argues, the claims were not properly exhausted and are procedurally barred from federal review (*Id*.). The Court again agrees with Respondent.

Upon review of the record, the Court concludes that Petitioner did not alert the state courts to the presence of a federal due process claim. Nowhere in his Initial Brief on direct appeal did Petitioner allege a federal due process violation (Respondent's Ex. B1). Rather, he raised his arguments purely as state law issues (*Id*.). He cited only state case law to support his arguments that the glass bottle was not a "deadly weapon," and the victim did not sustain "great bodily harm," as defined under Florida law. Petitioner therefore did not fairly present a federal constitutional claim to the state courts.

Petitioner may not now return to state court to present his federal claims, since a second direct appeal is not available. *See* Rule 9.140(b)(3), Fla. R. App. P. (defendant wishing to appeal a final judgment must do so within "30 days following rendition of a written order"). Consequently, Grounds Three and Four are procedurally barred from federal review unless Petitioner satisfies the "cause and prejudice" or "fundamental miscarriage of justice" exception to the procedural bar.

Petitioner has not alleged cause for his failure to raise his federal due process claim on direct appeal. And he has not demonstrated that he is entitled to review under the fundamental miscarriage of justice exception, since he does not allege the existence of new evidence that establishes his actual innocence. *See Schlup*, 513 U.S. at 327. Consequently, any federal due process claims asserted in Grounds Three and Four are barred from federal habeas review. Accordingly, Grounds

Three and Four do not warrant federal habeas relief.

Any of Petitioner's allegations not specifically addressed herein are without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **Clerk** is directed to enter judgment accordingly and close this case.

2. A Certificate of Appealability (COA) is **DENIED** in this case, since Petitioner cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). And because Petitioner is not entitled to a COA, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida on July 5, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner *pro se*; Counsel of Record